# Exhibit 1

**Mandracchia Law LLC**
Charles D. Mandracchia, Esquire
cman@mmattorneys.com
Attorney I.D. No. 52844
Jeff Soderberg, Esquire
jsoderberg@mmattorneys.com
Attorney I.D. No. 55369
2024 Cressman Road
P.O. Box 1229
Skippack, PA 19474
(610) 584-0700
(610) 584-0507 (fax)




Attorneys for Plaintiff,
Charles D. Mandracchia

| | | |
|---|---|---|
| CHARLES D. MANDRACCHIA<br>2024 Cressman Road, P.O. Box 1229<br>Skippack, PA 19474<br><br>Plaintiff,<br><br>v.<br><br>INDEPENDENCE BLUE CROSS<br>& BLUE SHIELD<br>1901 Market Street,<br>Philadelphia, PA, 19103<br><br>Defendant. | : | COURT OF COMMON PLEAS<br><br>PHILADELPHIA COUNTY<br><br>TERM, 2021<br><br>NO.<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff, Charles D. Mandracchia by his counsel listed below, hereby files this Complaint against defendant, Independence Blue Cross & Blue Shield, and in support thereof alleges the following:

## I. The Parties

1. Plaintiff, Charles D. Mandracchia, is an adult individual residing at 1001 Towamencin Avenue A412, Lansdale, PA 19446.

2. Defendant, Independence Blue Cross& Blue Shield ("IBC"), is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business at 1901 Market Street, Philadelphia, PA 19103.

3. This action is filed against IBC, and any and all of its affiliates, partners and/or subsidiaries.

4. It is believed, and therefore averred, that IBC exercises complete dominion and control over all its affiliates their officers and employees.

## II. Factual Background

5. Plaintiff, through his law firm of Mandracchia Law, LLC, purchased a group policy.

6. The group included plaintiff Charles D. Mandracchia, Jeffrey Soderberg, Elizabeth Killackey, Matthew Soderberg, and Michael Soderberg. A copy of the invoice listing the insured is attached as Exhibit A and incorporated herein by reference.

7. Plaintiff, as part of the group plan, purchased Blue Cross Blue Shield Personal Choice PPO Gold Referred at a cost to him of $1,330 a month.

8. Plaintiff turned 65 in August 2020.

9. On or about June or July 2020, plaintiff received a letter from IBC that he needed to sign up for Medicare A & B.

10. Plaintiff did sign up for Medicare A since it was at no cost but did not understand why he needed to sign up for Medicare B since he was paying $1,330 a month for coverage under the Personal Choice plan.

11. The plaintiff knew of other people who were 65 or older and were still under the group health insurance plan from the company for which they worked and were not enrolled in Medicare.

12. IBC stated it would not pay for any bills that Medicare would pay but continued to bill plaintiff his full premium amount for Personal Choice from August 2020 when he turned 65 until the end of the contract period of March 2021.

13. Plaintiff did not know that under the law if your group Health Care plan has 25 members or less you need to sign up for Medicare B, but if your group plan has greater than 25 members you do not have to sign up for Medicare B.

14. IBC was billing for full coverage under the plan.

15. At no time did IBC send a bill less than $1,330 a month for coverage for plaintiff, Charles D. Mandracchia.

16. Plaintiff, through his law firm every month, paid the full premium and if the premium was not paid in full then the other insureds would not have had health insurance coverage.

17. On or about November 30, 2020, plaintiff was rushed to Lansdale Abington Hospital located in Lansdale by ambulance for a severe case of sciatica because he was unable to walk or be mobile due to severe pain running down his back through his leg causing severe spasms.

18. Plaintiff was discharged from Lansdale Abington Hospital on or about December 2, 2020 even though he still had all the symptoms.

19. On or about December 3, 2020, plaintiff Charles D. Mandracchia was rushed by ambulance to Einstein Hospital and was discharged on or about December 8, 2020.



Case ID: 210600511

20. Subsequently, shortly after his discharge, plaintiff went to see a pain management specialist, Dr. Jasmeet Oberoi, MD, of the Einstein Health Care Network located at 609 W. Germantown Pike, Suite 270, East Norriton, PA 19403.

21. On or about late December and early January, Dr. Oberoi treated plaintiff with two spinal injections to relieve the pain as an outpatient at Einstein outpatient facility located on the same campus as Einstein Hospital.

22. Plaintiff also received physical therapy at Einstein rehabilitation located in Collegeville, Pennsylvania.

23. Blue Cross Blue Shield did not pay under the contract for the medical services and ambulance services but continued to bill plaintiff the full amount every month.

24. IBC has committed fraud on plaintiff and engaged in fraudulent and deceptive conduct.

25. IBC offered plaintiff the full benefits of the Personal Choice: Preferred Plan for $1,330 a month.

26. IBC, by selling plaintiff the policy and billing plaintiff the full amount, fraudulently induced plaintiff to pay $1,330 per month believing that he had full coverage under the plan.

27. From August 2020 through March 2021, IBC never intended to pay for plaintiff's medical expenses as promised under the plan.

28. IBC at all times accepted the money and deposited the money into its account.

29. IBC five years ago had approximately five billion dollars or more in reserves.

30. Plaintiff believes and therefore avers IBC currently has over five billion dollars in reserves.

31. Plaintiff at all times has asked IBC to pay for his medical bills through his insurance agent, Millennium Insurance Agency, in particular Sara Picard.

32. Plaintiff exhausted his administrative remedies as a representative from Blue Cross contacted Plaintiff in February and said she was his advocate to argue plaintiff's position and Blue Cross still refuses to pay the medical bills after accepting the full premium every month.

33. IBC still refuses to pay bills which exceed $11,000.

34. Plaintiff has now been contacted by collection agencies for payment of these bills that IBC is obligated to pay.

35. Medicare A did pay part of the hospital visits so IBC did not have to pay but collected funds as if they would pay.

36. IBC is one of the largest health care providers in the country and has no accountability and believes that they can charge insureds whatever they want without providing coverage.

37. IBC has acted in bad faith in all of these negotiations.

38. Plaintiff has paid IBC $10,640 from August 2020 through March2021 and IBC has refused health care coverage as promised under the plan.

39. As of January 2021, plaintiff has both Medicare A and Medicare B and in January, February and March IBC still billed the full premium and did not provide the coverage under the plan.

40. IBC's conduct is wanton and outrageous and IBC billed and accepted the premiums knowing that it was not going to pay medical bills and other covered services and therefore should pay punitive damages.

41. During times material hereto, plaintiff has repeatedly sought coverage for services covered under the Personal Choice plan.

42. IBC continued to tell plaintiff's insurance agent to have Medicare pay the bills.

43. During times material hereto, IBC has denied said coverage requests for payment of hospital bills, doctor bills, therapy, pain management and injections even though Medicare paid a partial payment.

44. Moreover, IBC stated to providers that there was no coverage under the plan even though they billed the full premium and collected it as stated above, the total amount being $10,640, therefore they should pay the full balance of all the bills.

45. The denial of coverage posed a substantial risk to plaintiff's health and well-being.

46. IBC's denials are ongoing and continual.

47. Upon information and belief, IBC at all times material hereto, knew that it did not have a reasonable basis for its denials since it accepted the full premium payment.

48. It is believed, and therefore averred, that IBC's denial of these reasonable requests was carried out for the express and intended purpose of denying plaintiff the payments due and owing on his behalf under the Personal Choice plan and to confuse plaintiff concerning his coverages.

49. It is believed, and therefore averred, that IBC engaged in the practice of denying and refusing plaintiff's reasonable requests for coverage in order to benefit itself financially, at plaintiff's expense.

50. It is believed, and therefore averred, that IBC was at all times material hereto well aware that its denials posed a substantial risk to plaintiff's health and well-being.

51. It is believed, and therefore averred, that IBC's aforementioned conduct (denying claims it was required to pay) constituted a breach of a known duty.

52. It is believed, and therefore averred, that IBC's aforementioned conduct (denying claims it was required to pay) constituted a frivolous and unfounded behavior.

53. It is believed, and therefore averred, that IBC believes itself to be immune from bad faith lawsuits, and that this belief makes it feel empowered to breach its duty of good faith and fair dealing to faithful insureds such as plaintiff.

54. IBC's denials have caused one or more medical providers to bill plaintiff directly for services that should have been covered under the Personal Choice plan, causing plaintiff to incur liabilities he should not have incurred.

55. Further, and going forward, plaintiff is in jeopardy of losing the ability to obtain services because of the impact that IBC's actions could have on his credit.

56. IBC's recent denials are only the latest in a longline of unreasonable denials and unfair behavior by IBC directed at plaintiff.

57. Indeed, IBC has for a number of years engaged in a course of conduct specifically designed to undermine the insureds of their contractual rights, and to obfuscate and minimize its obligation to insureds.

58. Upon information and belief, IBC has engaged in the conduct described in this Complaint for the very same reasons it has in the past engaged in its unreasonable actions and failures to act: because it believed the plaintiff would be unable to act against IBC.

59. IBC is using deceptive practices in doing business.

60. If plaintiff, through Mandracchia Law, LLC, did not pay for the full premium, then other members' coverage would have been denied.

61. IBC never offered a different coverage since they also provide Medicare Plans which they should have offered when they sold the plan.

62. IBC at the beginning of the coverage period March of 2020 knew Plaintiff would be turning 65 in August.

63. Plaintiff committed fraud by selling plaintiff a policy knowing IBC would not provide coverage during the full contract year, March of 2020 until March of 2021

64. IBD intentionally misrepresented facts to plaintiff when they sold the Personal Choice coverage.

65. Plaintiff is emotionally harmed with stress due to Bills arriving daily and collection agencies calling him.

66. IBC has been unjustly enriched and should repay all premiums paid by plaintiff for coverage under the Personal Choice Plan.

67. Plaintiff's reputation and credit is being harmed due to IBC's failure to pay the medical bills.

68. IBC's refusal to pay for the bills is causing a great deal of embarrassment to the plaintiff.

**COUNT I**
**Breach of Contract**

69. Plaintiff incorporates paragraphs 1 through 68 as though fully set forth at length.

70. IBC never intended nor did fulfill the terms of its contractual agreement

71. IBC did not act in good faith or fair dealing, which is included in every contract.

WHEREFORE plaintiff, Charles D. Mandracchia, hereby demands judgment in his favor and against defendant, Independence Blue Cross, in an amount in excess of $50,000, along with interest, costs, attorneys fees and such other relief as is deemed just and appropriate.

**COUNT II**
**For Bad Faith**

72. All other allegations in this Complaint are re-alleged and incorporated by reference as though fully set forth herein.

73. Defendant has a fiduciary obligation to persons such as plaintiff to administer its insurance policies in good faith.

74. Here, IBC has made unfounded and unsupported decisions to deny coverages for goods and/or services to plaintiff, as described above.

75. IBC's past acts/failures to act constituted, and its ongoing actions constitute a breach of its fiduciary duty to plaintiff, insofar as IBC, *inter alia*: 1) did not have a reasonable basis for denying such claims since it accepted the full premium payment; 2) was at all times aware that it billed the full premium and accepted the full premium; 3) billed plaintiff the full premium knowing it would not provide full coverage; 4) recklessly disregarded its obligations to plaintiff in order to save money; 5) intentionally failed to provide any support for its denials, since it billed and collected the full premium; and 6) it knew at all times it would not provide coverage under the plan beginning in August of 2020.

76. Further, IBC's actions and failures to act are the latest in a tapestry and pattern of improper coverage denials to plaintiff, and are/were designed, *inter alia,* to cause plaintiff harm believing that it would not be punished or held accountable for its fraudulent conduct.

77. In connection with the conduct described herein, defendant has engaged in unfair methods of competition and unfair and deceptive acts and practices, including, but not limited to, the following acts and practices:

a. causing a likelihood of confusion or misunderstanding as to the legality of the coverages offered to plaintiff;

b. fraudulent conduct which created a likelihood of confusion of misunderstanding regarding the coverages offered to plaintiff;

c. failing to comply with the terms of its written insurance agreement;

d. billing the full premium knowing it would not pay for the claims;

e. if the full premium would not have been paid then the other insureds would not have had coverage;

f. making false or misleading statements of fact concerning the reasons for the denials at issue since it billed the full premium;

g. making false or misleading statements which includes but not limited to billing the full premium and causing a likelihood of confusion regarding defendant's coverage;

h. causing a likelihood of confusion or misunderstanding regarding the extent of coverage;

i. refusing to pay plaintiff's claims even where its investigation discloses that a claim should be honored since it billed and collected the full premium;

j. refusing to pay claims without conducting reasonable investigations based upon all available information;

k. compelling plaintiff to bring this lawsuit; and

l. fraudulently billing plaintiff the full amount which represented full coverage under the policy.

78. The aforesaid conduct of defendant violated, *inter alia*, the Unfair Insurance Protection Act, 40 P.S. §1171 *et seq.* and the Pennsylvania Unfair Trade Practices and Consumer Protection Act, 73 P.C.S. §7301.

79. Further, and as such, defendant's acts, and failures to act, constitute a violation of Pennsylvania's bad faith statute, 42 Pa.C.S §8371.

80. As a result of defendant's violations, which are ongoing, plaintiff will suffer a financial hardship.

**WHEREFORE**, plaintiff, Charles D. Mandracchia, demands judgment in his favor against defendant, Independence Blue Cross, in an amount in excess of $50,000, along with punitive damages, attorneys' fees, costs and such other relief as deemed just and appropriate.

**COUNT III**
**Violation Of Pennsylvania's Unfair Trade and Consumer Protection Act**

81. All other allegations in this Complaint are re-alleged and incorporated by reference as though fully set forth herein.

82. As set forth above, defendant has engaged in a course of conduct that has, in addition to causing plaintiff substantial legal fees, costs, emotional distress and risk to his health, and the risk of the other insureds not being covered including a minor child and as to their health and safety.

83. Based upon its repeated and ongoing actions, it does not appear that IBC has any intention of fulfilling its contractual obligations

84. In addition, defendant has unlawfully advised providers that it will not pay for the medical bills and ambulance bills which exceed $11,000.

85. Defendant's actions, and continuing pattern of conduct, have caused damage to plaintiff in amounts not yet fully determined, and will continue if unabated to cause plaintiff damages into the foreseeable future and beyond.

**WHEREFORE**, plaintiff, Charles D. Mandracchia, demands judgment in his favor against defendant, Independence Blue Cross, in an amount in excess of $50,000, along with punitive damages, attorneys' fees, costs and such other relief as deemed just and appropriate.

**COUNT IV**
**For Intentional Infliction of Emotional Distress**

86. All other allegations in this Complaint are re-alleged and incorporated by reference as though fully set forth herein.

87. At all times material hereto, defendant was well aware that plaintiff suffered from serious, life-threatening medical conditions that required expensive, essential, continual care.

88. In fact, defendant was intimately aware of plaintiff's medical history and condition, as well as the types and costs of the life-sustaining goods and services required by plaintiff on a continual basis.

89. Further, as a medical insurer intimately familiar with plaintiff's medical condition, defendant was well aware that its actions and failures to act exacerbated plaintiff's physical and psychological maladies, and had potentially life-threatening consequences.

90. Defendant's historical and ongoing pattern of conduct, when viewed in light of known obligations to plaintiff under the law of contract, as well as under state and federal laws, coupled with its intimate knowldge of plaintiff's medical history, can lead to only one conclusion: defendant has attempted by any means possible to extricate itself from its

unprofitable relationship with plaintiff through its callous actions and inactions, which have continued like hurricane driven rain for a substantial period of time.

91. The continuity and harshness of IBC's conduct, when viewed under the totality of the circumstances, was cruel, heartless, harmful and beyond the bounds of all human decency so as to constitute what must be characterized as intentional infliction of emotional distress.

92. Here, IBC has made unfounded and unsupported decisions to deny coverages for goods and/or services to plaintiff, as described above.

**WHEREFORE**, plaintiff, Charles D. Mandracchia, demands judgment in his favor against defendant, Independence Blue Cross, in an amount in excess of $50,000, along with punitive damages, attorneys fees, costs and such other relief as deemed just and appropriate.

Mandracchia Law LLC

BY: ______________________
Charles D. Mandracchia Esq.
Jeffrey W. Soderberg Esq.